HYNSON et ux. v. GULF PRODUCTION CO.
(No. 2422.)

(Court of Civil Appeals of Texas. Texarkana.
June 16, 1921. Rehearing Denied
June 23, 1921.)

1. Mines and minerals ⬥⬥55(3)—Contract held to convey indefeasible legal title to minerals, and not merely a lease.

Contract whereby owner "granted, bargained, sold, and conveyed" specified minerals "in and under" described land to another, "to have and to hold forever," in consideration of the sum of $250 and a certain portion of the royalties, and wherein it was agreed that the instrument should have the effect "to sever all the minerals in or under said lands from the surface thereof and to sell and convey all such minerals," *held* not merely a lease, but a conveyance of an indefeasible legal title to the minerals, if any, in or under the land.

2. Mines and minerals ⬥⬥48, 55(1)—Minerals are part of "realty," and as such subject to sale and conveyance.

Minerals, including oil and gas, are a part of the realty while in place in and under land, and as such are subject to sale and conveyance.

[Ed. Note.—For other definitions, see Words and Phrases, Realty.]

3. Mines and minerals ⬥⬥55(8) — Implied agreement to develop minerals within a reasonable time a covenant, breach of which entitles grantor to recover damages merely.

An implied undertaking on the part of grantee to whom minerals had been conveyed to discover and develop minerals within a reasonable time would be a covenant, a breach of which would entitle the grantor to recover damages merely, and not a condition subsequent entitling grantor, on noncompliance therewith, to a cancellation of the contract.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Suit by William Chapman Hynson and wife and another against the Gulf Production Company. From judgment for defendant, named plaintiffs appeal. Affirmed.

"In consideration," it was recited in the instrument executed and delivered by appellants to the J. M. Guffey Petroleum Company April 12, 1910, "of the sum of $250 to us in hand paid, the receipt of which is hereby acknowledged, and the further consideration of the agreement on the part of the vendee herein that it, its successors and assigns, will render and pay to the vendors, their successors and assigns, one equal one-eighth of all the net proceeds realized from the sale of any of the minerals which may be found in or under the land hereinafter described and marketed by the grantee, its successors or assigns, and if said land is now under valid and binding mineral lease to any person or corporation other than grantee, that since this instrument is intended to and does pass all royalties reserved in such lease to the grantee herein, that such grantee, its successors and assigns, will pay to the grantor or assigns one-half of all such royalties grantee or assigns may receive under such lease," appellants "granted," it was further recited, "bargained, sold, and conveyed, and do hereby grant and sell, to the said J. M. Guffey Petroleum Company, a corporation, all of the petroleum, oil, gas, coal and zinc, sulphur, iron and lead, and all other minerals of every kind or character, whether solid, liquid, or gaseous, in or under" the 167 acres of land particularly described. "It being hereby intended and this instrument shall have the effect," it was further recited, "to sever all the minerals in or under said land from the surface thereof, and to sell and convey all such minerals together with the free and complete right of ingress and egress to and from said land to conduct any and all mining operations necessary or convenient to exploit for and produce and save said minerals and to erect and maintain all necessary and appropriate derricks and buildings and machinery to sink all necessary shafts from the surface, drill wells, lay pipe lines for the conduct of liquid or gaseous minerals, and to erect tanks or reservoirs for holding the same and to the extent necessary to conduct mining operations use of the surface of said land is granted. It is stipulated herein that no wells shall be drilled or shafts sunk nearer than ——feet of any dwelling house now on said land, and that all pipe lines shall be buried when the same runs through cultivated land, so as to interfere as little as may be with the cultivation of the surface. To have and to hold unto the said J. M. Guffey Petroleum Company, it successors and assigns, the said minerals and mineral rights forever; and we do hereby bind ourselves to warrant and forever defend the title to said minerals herein sold and granted against all persons claiming or to claim the same under the law or equity."

The suit was by appellants and one Smith (as to whom there was a dismissal, and who is not a party to the appeal) against appellee, a corporation, who had acquired the rights conferred by the instrument on the J. M. Guffey Petroleum Company. It was to cancel said instrument and for damages appellants claimed they suffered because of "slander," they alleged, of their title by appellee, in that it asserted ownership by force of the instrument of minerals in and under the land. Appellants alleged that the land was their homestead, and they alleged and proved that "no drilling operations were started on the land to the date (September 7, 1920) of the trial." The grounds appellants relied on for relief they sought were, as alleged: (1) That

⬥⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

they were induced to execute the instrument as a result of fraud practiced on them by the petroleum company; (2) that the instrument was void as a conveyance of an interest in the land because its execution was not acknowledged by appellant Laura Hynson in the way provided by the statute (Vernon's Sayles' Ann. Civ. St. 1914, arts. 6802, 4621); and (3) that both the said petroleum company and appellee failed to take steps toward discovering and bringing to the surface oil, gas, and other minerals, if any, in or under the land, and by such failure forfeited all rights and interest in the land conferred by the instrument. Special issues covering appellants' contentions with reference to fraud charged and the acknowledgment of said Laura Hynson were submitted to the jury. The findings thereon were against appellants, and are not complained of here. The appeal is from a judgment denying appellants any of the relief they sought.

Jones, Sexton, Casey & Jones, of Marshall, for appellants.

John E. Green, of Houston, for appellee.

WILLSON, C. J. (after stating the facts as above). The contention presented by the assignments in appellants' brief is that the trial court erred when he refused to instruct the jury to find in their favor. In support of the contention appellants insist that the instrument in question did not operate as a conveyance to the petroleum company and its assigns of the legal title to minerals in and under the land, but operated, instead, only as "a lease," quoting from the assignments, "granting to the petroleum company the right to obtain oils and minerals from under the land." There was therefore an implied undertaking on the part of the petroleum company, they say, to discover and develop such minerals, if any, within a reasonable time from the date of the instrument. And it appearing without dispute in the testimony that no steps had been taken during the period of more than 10 years which elapsed between the date of said instrument and the date of the trial to discover such minerals, if any, they insist it appeared as a matter of law that the petroleum company and appellee as its assign, had breached such implied undertaking, and thereby forfeited all rights conferred on them by the instrument.

[1] It may be conceded, without determining, that if the instrument was a mere lease, the trial court, on the theory that it appeared as a matter of law that appellee had abandoned the contract, should have instructed the jury as appellants requested it to (Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464); but we think the instrument should not be construed as a lease merely. It must we think, be construed as a conveyance to the petroleum company and its assigns of an

indefeasible legal title to minerals, if any, in or under the land.

[2] That minerals, including oil and gas, are a part of the realty while in place in and under land, and that as such they are subject to sale and conveyance, are not open questions in this state. Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989; Marnett Oil & Gas Co. v. Munsey, 232 S. W. 867, decided by this court May 12, 1921, and not yet [officially] reported.

That the instrument evidenced a sale and was intended by the parties to operate as an absolute conveyance of the minerals appeared about as conclusively, it seems to us, as language could have made it appear. That intention, sufficiently shown, perhaps, by the recital that appellants, for the substantial consideration stated, had "granted, bargained, sold, and conveyed" all the minerals "in and under the land" to the petroleum company, "to have and to hold * * * for- ever," was emphasized and placed beyond question by the further recital that it was intended that the instrument should "have the effect to sever all the minerals in or under said land from the surface thereof and to sell and convey all such minerals."

[3] The minerals being an interest in the land which could be sold and conveyed, and the parties having intended that the transaction between them should operate as a sale and conveyance thereof, no reason is apparent why it should be held that an indefeasible legal title to the minerals did not pass to the petroleum company and its assigns. Appellants insist, however, that if the title did pass, it was on a condition the law would imply, to wit, that the petroleum company and its assigns would within a reasonable time thereafter discover and develop the minerals in and under the land. Appellants argue that the case was therefore within a rule stated in the Daugherty Case, supra, as follows:

"A fee may pass by deed upon a condition subsequent to the same extent as though the condition did not exist, subject to the contingency of being defeated according to the condition."

The argument ignores a difference which made the rule applicable to the facts of the Daugherty Case and inapplicable to the facts of this rule to wit, that in the Daugherty Case the condition of defeasance was one expressed, in the instruments, while in this case, if there was an undertaking on the part of the petroleum company to discover and develop minerals in and under the land within a reasonable time, as claimed by appellants, it was an undertaking the law implied. It was expressly held by the Supreme Court in Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464, that an undertaking of that kind should not be construed as a condition subsequent, failure to comply with which entitled the

grantor to a cancellation of the contract, but should be construed as a covenant, a breach of which entitled the grantor to recover damages he was able to show he thereby suffered.

There is no error in the judgment; therefore it is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes